## THE KOREA MARU (two cases).

(Circuit Court of Appeals, Ninth Circuit. October 11, 1918.)

### Nos. 3114, 3115.

1. SHIPPING ☞166(1)—CARRIAGE OF PASSENGERS—PERSONAL INJURIES—MEDICAL TREATMENT.

A ship is liable for the incompetence and unskillfulness of its physician and surgeon in treatment of an injured passenger only when it failed to exercise reasonable care in his employment.

2. CARRIERS ☞280(1)—CARRIAGE OF PASSENGERS—INJURY TO PASSENGERS.

The duty of a carrier to a passenger is the same, whether liability is claimed as a breach of contract or as a failure to perform the duty of a carrier.

3. CARRIERS ☞280(1)—CARRIAGE OF PASSENGERS—DUTY OF CARE.

Although a carrier does not insure that a passenger will be carried safely, still it is bound to exercise as high a degree of care, skill, and diligence in receiving a passenger, conveying him to his destination, and

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

setting him down safely as the means of conveyance employed and the circumstances of the case will permit.

4. SHIPPING ☞166(3)—INJURY TO PASSENGERS—ASSUMPTION OF RISK.

Passengers on a steamship, in going upon deck for air and exercise, as was customary, did not assume the risk, unless the danger was apparent and obvious to them, exercising reasonable care for their own safety, or unless warned by the officers of the danger.

5. SHIPPING ☞166(1)—CARRIAGE OF PASSENGERS—NEGLECT OF INJURED PASSENGERS.

Failure of a ship's surgeon to treat one of two injured passengers at all, although requested to do so, and treatment of the other for a contused wound, when there was a compound fracture of a bone of her leg, *held* negligence, for which the ship was liable.

Appeal from the District Court of the United States for the Territory of Hawaii; Horace W. Vaughan, Judge.

Suits in admiralty by Uto Yenobi and by Omito Itokazu against the Japanese steamship Korea Maru. Decrees for libelants, and claimant appeals. Affirmed.

Smith, Warren & Whitney, William O. Smith, and L. J. Warren, all of Honolulu, T. H., and Samuel Knight, of San Francisco, Cal., for appellants.

George A. Davis and Charles S. Davis, both of Honolulu, T. H., for appellees.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

MORROW, Circuit Judge. The libels charge the breach of a marine contract in the failure of the owners and officers of the steamship Korea Maru to carry the libelants safely and without injury from the port of Kobe, in the empire of Japan, to the port of Honolulu, in the district and territory of Hawaii, in the United States. The two suits arise upon substantially the same state of facts, involving the same issues, and were heard together, both in the lower court and here, and will be so treated in this opinion.

It is alleged that the libelants were passengers for hire on the Japanese steamship Korea Maru, leaving the port of Kobe, empire of Japan, on the 6th day of December, 1916, and being third-class or steerage passengers on that boat; that the Korea Maru was at that time engaged in carrying passengers, mail, and freight from divers ports and places in the republic of China, the empire of Japan, and other ports and places, to the port of Honolulu, territory of Hawaii, and San Francisco, state of California; that on or about the 11th day of December, 1916, while said steamship was upon the high seas, the libelants were compelled by reason of the stifling condition of their quarters, the heat and impure air, to go from their quarters up to and upon the lower deck of the vessel; that while on the deck, and during heavy weather, and while a heavy swell and a high sea was running, they were struck by a wave, which swept over and across the deck of the steamship, and fell with great force and violence upon the deck of the steamship, throwing libelants down; that the libelant Uto Yenobi suffered a fracture of the metatarsel bone of the right foot,

and the libelant Omito Itokazu suffered a compound fracture of the tibia of her right leg and was otherwise bruised and injured; that neither libelant received any proper medical care after the injuries complained of; and that said injuries were caused by the negligence of the appellants, in not warning the libelants that it was dangerous and unsafe at that time to go on the deck of the vessel, and in failing to provide safety appliances on the deck, and in allowing the libelants to go upon the deck of the steamship without taking the necessary precautions for the safety of the passengers.

During the trial, the libel in case No. 3114 was amended, charging that the claimant employed an unskillful and incompetent physician and surgeon, who wholly failed and neglected to attend and treat the libelant Uto Yenobi, and by reason of such neglect libelant suffered great hardship and pain. The libel in case No. 3115 was also amended, in which the claimant is charged with the employment of an unskillful and incompetent physician and surgeon, who treated the broken leg of Omito Itokazu as an ordinary contused wound, and not as a broken leg, by reason of which unskillful and incompetent treatment the libelant suffered great hardship and pain.

[1] With respect to the charge contained in these amendments, that the physician and surgeon neglected the libelants, we are of the opinion that such neglect was an element in the general charge of neglect for which the vessel was liable; but with respect to the charge that the physician and surgeon was incompetent and unskillful in the treatment of Omito Itokazu we are of the opinion that the vessel was only liable when the claimant failed to take reasonable care in the employment of such an officer on board the vessel. Hutchins v. American Steamship Great Northern, 251 Fed. 826, —— C. C. A. ——. It is not charged in either of the libels or the amendments that the claimant was negligent in the selection of, or in the employment of, the physician and surgeon, or that his incompetency or lack of skill, as charged, was known to the claimant at the time of his engagement, or that his incompetency and lack of skill, as charged, was subsequently ascertained by the claimant, and that with such knowledge he was retained as an employé of the vessel. In the absence of such a charge, and competent evidence to sustain it, we pass over the evidence relating to the lack of skill and competency on the part of the physician and surgeon in the treatment of Omito Itokazu.

[2] We come, then, to the general charge of negligence, the character of which, with respect to the duty of the carrier to a passenger, is the same, whether the liability of the carrier is claimed as a breach of contract or as a failure to perform the duty of a carrier.

[3] The care required of a carrier in transporting passengers, and its consequent liability, is sufficiently stated for the present purpose under the general rule that, although the carrier does not insure that the passenger will be carried safely, still it is bound to exercise as high a degree of care, skill, and diligence in receiving a passenger, conveying him to his destination, and setting him down safely, as the means of conveyance employed and the circumstances of the case will permit. 10 Corpus Juris, 854.

The testimony relating to the weather conditions on board the vessel at the time of the accident is conflicting. The chief officer testified that the weather was not bad, that the ship did not roll much, and that he did not think the sea was so rough that it was dangerous for passengers to be on deck. He said the spray came on deck, but no wave came over. He testified, further, that there was a standing order given that the passengers were not to go up on deck when it was in any way rough, because it was dangerous.

The head steward testified that he saw the libelants pass his room, going in the direction of the upper deck, just before the accident, and he warned them then that they must not go up. He said to them:

"It is rough, and the spray is coming over the deck," "and that the sea was rough, and not to go up on deck;" "that it was dangerous, and for that reason not to go up on deck."

He subsequently modified his testimony to the effect that he did not say to the libelants that it was dangerous, but that he said it was dark, and the spray would come on deck, and that they would get wet. A steerage boy testified that the steward told him to tell the passengers that the weather was bad, and it would be dangerous for the passengers to go up on deck, and he says he so told the libelants.

The libelants testified that they were not warned not to go on deck, and they were not told it was dangerous. A female companion, who was with the libelants, and who went up on deck with them and was struck down at the same time, testified that she heard no warning that it was unsafe or dangerous to go on deck. A steerage passenger, who was on deck and saw the libelants struck down, testified that the weather was bad and the waves were rough; but he heard no warning that it was dangerous to be on deck. Two other passengers testified that they heard no warning that it was dangerous to go on deck, although they appear to have been situated so as to have heard it, had such a warning been given.

The court below found as facts, from this testimony, that the sea was rough and the weather was bad; that it was in fact dangerous for passengers to be on the steerage deck; that the officers and crew were negligent in not so warning the passengers, and in allowing them to go on deck. The weight of testimony supports this finding, and we find no reason for rejecting it.

[4] The claimant contends that the accident happened by reason of the libelants slipping and falling upon the deck, which was wet from flying spray and rain, and was an ordinary and usual risk of travel at sea, which libelants assumed. This contention is in conflict with the claim that the deck was dangerous and that the libelants were so warned; but, assuming that such an alternative defense may be made, it is not supported by the evidence. The libelants were not walking on the deck at the time they were struck down by the wave. They were standing still on the steerage deck near the entrance to the steerage quarters, from which they had just emerged. The steerage passengers had the right to go on the steerage deck for air and exercise, and it was usual for them to do so when the conditions of weather and sea were

favorable. When the conditions were not favorable, it was the duty, and the evidence shows that it was the custom, of the officers of the vessel to so warn the passengers. If the danger upon the deck was not apparent and obvious to the libelants, exercising reasonable care for their own safety, they assumed no risk, unless warned by the officers of the vessel of the danger, which was not a fact; and it does not appear from the evidence that the danger was obvious or apparent, or that the libelants had been on deck long enough to apprehend the danger from their own observation. The conclusion is that the libelants did not assume the risk, and that they were not guilty of contributory negligence.

[5] It is charged that the libelants were neglected after they were injured. The physician and surgeon carried by the vessel saw Omito Itokazu soon after she was injured, when he was called by the steerage steward to see her. He found her lying on the steerage deck below, suffering pain from an injury which he diagnosed as a contused wound on the front part of her leg. He did not see her again for two or three days, when he was again called by the steerage steward. On this second visit the doctor directed that the bandage should be removed and the leg washed. He applied antiphlogistine and the leg was again bandaged. The next time he saw the libelant she was in the ship's hospital, when the libelant was taken there for inspection on the arrival of the vessel at Honolulu. The bandage of antiphlogistine had been removed and the leg was bare. He did not see her after that, and he did not see her carried from the vessel to the immigration station by a fellow passenger, where she was reported to the surgeon of the United States Public Health Service, who upon examination thought the injury was a fracture. He immediately had her sent to the Queen's Hospital, where she was examined by the surgeon in charge, who found she had a compound fracture of the right tibia. An X-ray picture was taken of the injured limb, to ascertain the position of the fragments. The picture was introduced in evidence, and shows the fracture clearly and unmistakably.

On December 27th the wound had sufficiently healed to place the leg in a plaster cast, and the libelant remained under treatment in the hospital until March 7th, when she was discharged; but she had not fully recovered from the injury when the case was tried in April, 1917. She suffered pain from the time of the injury until about the time she was discharged from the hospital.

The ship's physician and surgeon claims to have discovered that the libelant's leg was broken before she was taken from the ship at Honolulu; but his health report, delivered to the health officer at Honolulu, does not show this fact. In this report it is stated that the injury was to her ankle. The only conclusion to be drawn from this testimony is that the libelant was neglected, and the nature of her injury was not ascertained, although it could have been, very soon after the accident, and some relief easily given.

Uto Yenobi, the other libelant, was carried below after her injury, and she was placed in her berth, where she remained until the arrival

of the vessel at Honolulu. The doctor did not attend or see her, although requested to do so by a friend of the libelant, who was a fellow passenger. At Honolulu she was carried to the immigration station by a fellow passenger and examined by the surgeon of the Health Service, as in the case of the other libelant, and she was found to have an injury to her foot. She was also immediately sent to the Queen's Hospital, where she remained under treatment until February 21, 1917. Her injury was of such a character as to cause her pain until about the time she was discharged from the hospital. The doctor on board the vessel makes no claim to have treated her, or to have seen her, after her injury.

The testimony in the record reveals the fact that these helpless creatures were otherwise shamefully neglected in a way that need not be mentioned in this opinion. Had there been no physician or surgeon on board the vessel, the neglect by the master or other officer to give them proper care would, under the rule we have stated, have rendered the vessel liable.

The District Court entered a decree in favor of Uto Yenobi for the sum of $1,200, and a decree in favor of Omito Itokazu for $2,000. We see no reason for disturbing the decrees on the ground that they are excessive. In our opinion they are not excessive, but under all the circumstances are fair and reasonable.

Finding no error in the record, the decrees of the court below are affirmed.