Iluminado NIETES, Administrator of the Estate of Julito Nietes, deceased, Libelant,

v.

AMERICAN PRESIDENT LINES, LTD., a corporation, William Barna, Elizabeth Martin, Katherin McCarthy, First Doe through Tenth Doe, inclusive, Respondents.

No. 27807.

United States District Court
N. D. California, S. D.
Nov. 23, 1959.

Jack H. Werchick and Martin J. Jarvis, San Francisco, for libelant.

Peart, Baraty & Hassard, and Lillick, Geary, Wheat, Adams & Charles, San Francisco, Cal., for respondent.

SWEIGERT, District Judge.

This is a libel in admiralty brought under the Death on the High Seas Act, 46 U.S.C.A. § 761 et seq., (1920), by the father of the deceased child, as administrator of his son's estate. Libellant alleges that decedent became ill while traveling as a passenger on the high seas on board a regular passenger vessel, belonging to respondent shipowner, and that he subsequently died.

In its first claim, libellant asserts that the death was caused by negligent treatment by employees of the defendant, a physician and nurses, and he seeks to recover damages for wrongful death against the nurses, the physician, and also against the shipowner under the doctrine of *respondeat superior*.

The libel contains a second claim for relief, which we will discuss later.

As to the first claim for relief, respondent shipowner seeks dismissal, relying upon the ancient rule that a shipowner is liable for its negligence in hiring an incompetent physician, but is not liable for negligent treatment by him. Laubheim v. De Koninglyke N. S. Co., 1887, 107 N.Y. 228, 13 N.E. 781; The Great Northern, 9 Cir., 1918, 251 F. 826; The Korea Maru, 9 Cir., 1918, 254 F. 397. The rationale of this rule is that a doctor is, for purposes of medical treatment, an independent contractor, and not a servant, and that, therefore, the employer should not be held liable for the doctor's negligent treatment. The older cases, especially in the admiralty field, which have accepted this rationale, are cited, and we think, with implied criticism in De Zon v. American President Lines, 318 U.S. 660, 666, 63 S.Ct. 814, 87 L.Ed. 1065 (footnote 2).

It is our opinion that, where a ship's physician is in the regular employment of a ship, as a salaried member of the crew, subject to the ship's discipline and the master's orders, and presumably also under the general direction and supervision of the company's chief surgeon through modern means of communication, he is, for the purposes of *respondeat*

*superior* at least, in the nature of an employee or servant for whose negligent treatment of a passenger a shipowner may be held liable. The same would be true, *a fortiori*, as to a ship's nurses.

While it has been stated that "there is no more distinct calling than that of the doctor," Pearl v. West End St. R. Co., 1900, 176 Mass. 177, 179, 57 N.E. 339, 49 L.R.A. 826, we are, nonetheless, persuaded to this conclusion by numerous cases which demonstrate the growing tendency to hold the doctor a servant in special circumstances, as where he is a resident physician on a hospital staff, Collins v. Hertfordshire C.C., (1947) 1 All E.R. 633; Gold v. Essex C.C., (1942) 2 All E.R. 237; Hansch v. Hackett, 190 Wash. 97, 66 P.2d 1129; Giusti v. C. H. Weston Co., 165 Or. 525, 108 P.2d 1010; Brown v. La Société Francaise, 138 Cal. 475, 71 P. 516; Bellandi v. Park Sanitarium Ass'n, 214 Cal. 472, 6 P.2d 508, see also 2 Harper and James, The Law of Torts, 1395–7 (1956), or where he is a corporate employee performing medical services which accrue to the benefit of his employer, Mrachek v. Sunshine Biscuit Company, 1953, 283 App.Div. 105, 126 N.Y.S.2d 383; Mrachek v. Sunshine Biscuit Company, 1954, 308 N.Y. 116, 123 N.E.2d 801; Rannard v. Lockheed Aircraft Corp., 26 Cal.2d 149, 157 P.2d 1; Jones v. Tri-State Tel. & Tel. Co., 118 Minn. 217, 136 N.W. 741, 40 L.R.A.,N.S., 485.

The rule of the older cases rested largely upon the view that a non-professional employer could not be expected to exercise control or supervision over a professionally skilled physician. We appreciate the difficulty inherent in such an employment situation, but we think that the distinction no longer provides a realistic basis for the determination of liability in our modern, highly organized industrial society. Surely, the board of directors of a modern steamship company has as little professional ability to supervise effectively the highly skilled operations involved in the navigation of a modern ocean carrier by its master as it has to supervise a physician's treat-

ment of shipboard illness. Yet, the company is held liable for the negligent operation of the ship by the master. So, too, should it be liable for the negligent treatment of a passenger by a physician or nurse in the normal scope of their employment, as members of the ship's company, subject to the orders and commands of the master.

 A carrier is under no duty to practice medicine, and a shipowner is under no duty to provide medical facilities or hospital services to passengers, either by statute or common law, except where passengers ride in steerage. Act of August 2, 1882, c. 374, Par. 5, 22 Stat. 188, 46 U.S.C.A. § 155. And, this is true, notwithstanding the high degree of care which a carrier is bound to exercise in regard to its passengers in providing for their safety and comfort. Moore v. American Scantic Line, 2 Cir., 1941, 121 F.2d 767, 768. But, when a carrier undertakes the treatment of illness through medical services, provided by it aboard ship, it assumes the duty to treat carefully.

 There is reason for imposing such liability, because the employment of a doctor aboard ship is a beneficial substitute for the shipowner's otherwise more costly duty to sick passengers. Where the ship carries no ship's physicians or nurses, the carrier is under a duty to provide such care and attention as is reasonable and practicable under the circumstances, and this has traditionally required the master to change course and put in at the nearest port, according to the gravity of the illness. The Iroquois, 1904, 194 U.S. 240, 24 S.Ct. 640, 48 L.Ed. 955. This duty extends to both passengers and seamen whose lives may be threatened by illness on board ship. 13 C.J.S. Section 694(b), 1293–4. Any dereliction of the master in his duty to detour may be negligence for which the shipowner could be liable under the principle of *respondeat superior*. The shipowner, by providing a physician aboard ship, avoids his sometimes inconvenient and costly duty to change course for the benefit of an ailing passenger. This arrangement gives the shipowner competitive advantage in the maritime passenger industry over those sea-going carriers which have not provided the safety of on-board medical service.

 For these reasons, we conclude that libellant, alleging that the respondent physician and respondent nurses were employees of the respondent shipping company, has stated a good cause of libel against respondent shipowner, and therefore, the motion to dismiss the first claim of the libel is denied

 In considering libellant's second claim for relief, we have been unable to resolve the inherent ambiguity of the language. Particularly, we have been unable to ascertain whether libellant is alleging breach of the shipowner's duty to exercise due care in the selection of competent physicians, or whether libellant merely seeks to allege negligent failure to provide a competent medical staff. If libellant intends the former allegation, he states a good cause of libel, as the duty of a shipowner to use due care in the selection of a competent physician has been the traditional rule in our courts, The Great Northern, supra, The Korea Maru, supra. But, if the libellant intends the latter interpretation only, it does not state a good cause of libel, as the carrier is under no duty to provide a medical staff.

 We therefore, grant respondents' motion to dismiss the second claim for relief on the grounds of vagueness and ambiguity, but, in so doing, we grant libellant 30 days leave within which to amend his pleading.