762 So.2d 1001 (2000)
Dr. Leon RAND, et al., Petitioners,
v.
Janice HATCH, et al., Respondents.
No. 3D00-622.
District Court of Appeal of Florida, Third District.
July 5, 2000.
Rehearing Denied August 16, 2000.
Fowler, White, Burnett, Hurley, Banick & Strickroot, and Steven E. Stark, Miami, and June G. Hoffman, for petitioners.
Charles R. Lipcon, and David H. Pollack, Miami, for respondents.
Before GERSTEN, FLETCHER, and RAMIREZ, JJ.
RAMIREZ, J.
Petitioners Dr. Leon Rand and Nurse Connie Jackson seek certiorari review of the denial of their motion to dismiss the complaint for medical negligence filed by respondents Janice and Craig Hatch. In denying the motion to dismiss, the trial court found that general maritime law, rather than Florida state law, applies to the medical malpractice allegedly committed by petitioners while serving as cruise ship medical personnel on the high seas. We agree with the trial court that because the case is governed by general maritime law, the Hatches did not have to comply with the mandatory pre-suit screening requirements of Florida's Medical Malpractice Act, see § 766.106, Fla. Stat. (1997), *1002 prior to filing their complaint. The motion to dismiss was thus properly denied and we deny the petition for writ of certiorari.
On September 12, 1997, Janice and Craig Hatch departed on a cruise aboard Carnival Cruise Lines' M/S Fantasy. During their voyage, while on navigable waters, Janice Hatch visited the ship's infirmary in order to have her blood sugar level checked by the ship's medical personnel. Nurse Jackson, the ship's nurse, and Dr. Rand, the ship's physician, concluded that Janice's blood sugar level was 600 and determined that it was necessary to inject her with insulin. As a result of the injection, Janice lost consciousness and began having convulsions. Upon the loss of consciousness, Craig Hatch went to their cabin and retrieved Janice's glucose meter. When Mr. Hatch returned to the infirmary and retested Janice's sugar level with their own equipment, a blood sugar level of twenty-one was shown.
As a result of the incident, Janice and Craig Hatch filed suit against Carnival Cruise Lines, alleging unseaworthiness and responsibility for the alleged negligence of Dr. Rand and Nurse Jackson. They also sued Dr. Rand and Nurse Jackson, individually, alleging negligence for their failure properly to diagnose Janice's blood sugar level and failure to treat her properly. Dr. Rand and Nurse Jackson moved to dismiss the complaint on the grounds that Janice and Craig Hatch had failed to comply with the presuit screening requirements of Florida's Medical Malpractice Act prior to filing their malpractice action in state court. The trial court denied the motion to dismiss, reasoning that there is no presuit screening process required for a medical malpractice suit arising from an injury that occurred on the high seas because such injuries are covered under general maritime law and not by state law.
We conclude that there is no basis for certiorari review of the trial court's decision because there has been no departure from the essential requirements of law. The lower court was correct in denying the motion to dismiss because general maritime law applies to this case. In order for a cause of action to be governed by substantive maritime law, a two-part test must be applied to determine whether the tort falls under general maritime law. Under the first prong, the "locality" test, the court must determine whether the tort occurred in navigable waters. The second prong, the "nexus" test, requires a determination of whether the tort had a significant relationship to a traditional maritime activity. See Executive Jet Aviation, Inc. v. City of Cleveland, Ohio, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972); Dee v. Sea Ray Boats, Inc., 702 So.2d 1349 (Fla. 3d DCA 1997). In the present case, the locality requirement is satisfied because the cruise ship was sailing in the Gulf of Mexico at the time of Janice Hatch's injury. The more difficult decision involves the second prong of the test: whether Janice Hatch's injury had a sufficient relationship to a traditional maritime activity in order to satisfy the "nexus" test.
In Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 543, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995), the United States Supreme Court established that in considering whether a particular tort bears a significant relationship to traditional maritime activity to satisfy the nexus test, courts should consider whether the incident giving rise to the suit is likely to disrupt maritime activity and whether it is substantially related to traditional maritime activity to justify application of general maritime law. See Sisson v. Ruby, 497 U.S. 358, 365, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990)(discussing these considerations). In this case, Dr. Rand and Nurse Jackson were brought onboard a commercial vessel which sailed on navigable waters by the shipowner in order to render medical attention to both crew members and passengers when such attention was needed. Sick and injured crew and passengers, either left untreated or inadequately treated, are certainly likely *1003 to disrupt maritime activity, such as the successful navigation of a commercial vessel.
The second consideration established by Grubart is also present in this case because the allegedly negligent treatment given to the passenger took place onboard the ship while it was sailing in navigable waters. Courts have held that the negligence of a medical professional who causes injury to a person at sea constitutes a maritime tort and that causes of action founded on such negligence are to be governed by general maritime law. See, e.g., Barbetta v. S/S Bermuda Star, 848 F.2d 1364, 1368-69 (5th Cir.1988)(the court assumed that general maritime law governed in a malpractice action by a cruise ship passenger and held that the shipowner had no vicarious liability for the negligence of a competent, duly qualified doctor); Parker v. Gulf City Fisheries, Inc., 803 F.2d 828, 829-30 (5th Cir.1986) (furnishing medical care for those injured while traveling navigable waters constitutes a traditional part of admiralty law); Antoine v. Zapata Haynie Corp., 777 F.Supp. 1360 (E.D.Tex. 1991) (onboard health care and medical treatment of a vessel's crew, including the pilot, is an activity traditionally undertaken by vessels; general maritime law applies).
We believe that the circumstances presented by this case, involving a commercial cruise ship and an onboard injury, coupled with the relationship between the passenger/patient and the shipboard physician and nurse provide a sufficient nexus with traditional maritime activity to satisfy the second prong of the Executive Jet test. Therefore, the trial court properly applied general maritime law, which has no presuit screening requirements, in order to deny the motion to dismiss filed by the petitioners.
Petition for writ of common law certiorari denied.