864 So.2d 1 (2003)
Darce CARLISLE, Appellant,
v.
CARNIVAL CORPORATION, et al., Appellees.
No. 3D01-1518.
District Court of Appeal of Florida, Third District.
August 27, 2003.
Order Denying Rehearing and Granting Certification February 4, 2004.
*2 Charles R. Lipcon, Miami, and David Pollack, for appellant.
Kaye, Rose & Maltzman and Jeffrey B. Maltzman, and Darren W. Friedman, Holland & Knight LLP, and Rodolfo Sorondo, Jr. and Lenore C. Smith, Miami, for appellees.
Before COPE and RAMIREZ, JJ., and NESBITT, Senior Judge.
NESBITT, Senior Judge.
In March 1997, the Carlisle family embarked on a cruise aboard the Carnival cruise ship, the Ecstasy. During the cruise, 14 year old Elizabeth Carlisle felt ill with abdominal pain, lower back pain and diarrhea and was seen several times in the ship's hospital by the ship's physician, Dr. Mauro Neri. Over the course of several days Dr. Neri repeatedly advised the Carlisles that Elizabeth was suffering from the flu, assured them in response to their questions that it was not appendicitis, and provided antibiotics. Ultimately, the Carlisle family decided to discontinue their cruise and returned home to Michigan where Elizabeth was diagnosed as having a ruptured appendix. Her appendix was removed, and as a result of the rupture and subsequent infection, Elizabeth was rendered sterile.
Her parents filed the instant suit against Carnival and Dr. Neri, alleging, inter alia, that the doctor had acted negligently in his treatment of Elizabeth and that Carnival should be held vicariously liable for such negligence under theories of agency and apparent agency, and that Carnival was negligent in the hiring of Dr. Neri. The trial court entered summary judgment in favor of Carnival and this appeal followed.
The contract between Dr. Neri (identified therein as "CONTRACTOR") and Carnival (identified therein as "PURCHASER"), provided, in part:
CONTRACTOR agrees to provide services aboard vessel in the capacity of SHIP'S PHYSICIAN ... Said services shall consist of the providing of medical services and treatment to passengers and crew in accordance with PURCHASER'S Physician guidelines and shall be performed on a seven (7) dayper-week basis during regular and oncall vessel infirmary hours and for emergencies.
The contract further provides that Dr. Neri would receive a weekly salary as his sole source of income during the term of the Agreement, and that Carnival could dismiss Dr. Neri for "violations of the Ship's Articles" or "failure to perform duties to the satisfaction of" Carnival. Dr. Neri was issued a ship's uniform and agreed his photograph, name and likeness could be used to promote and publicize Carnival's vessels in any and all media. The record shows that Dr. Neri was considered by Carnival to be an officer of the ship. In a separate agreement Carnival agreed to indemnify Dr. Neri for up to $1 million with regard to claims brought against him arising out of any act or omission on his part while acting in the course of his duties as ship's doctor, and Dr. Neri agreed that Carnival, or its insurer, would be permitted to take absolute control over the defense and handling of such claims.
The cruise ticket issued to the Carlisles provides, in part:
If the vessel carries a physician, nurse, masseuse, barber, hair dresser or manicurist, it is done solely for the convenience of the guest and any such person in dealing with the guest is not and shall not be considered in any respect whatsoever, as the employee, servant or agent of the carrier and the carrier shall not be liable for any act or omission of such *3 person or those under his order or assisting him with respect to treatment, advice or care of any kind given to any guest.
Torts committed within maritime jurisdiction fall within the purview of maritime law. See Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959); Klosters Rederi A/S d/b/a Norwegian Caribbean Lines, v. Cowden, 447 So.2d 1017 (Fla. 3d DCA 1984). See also Rand v. Hatch, 762 So.2d 1001 (Fla. 3d DCA 2000) (general maritime law applies to a claim for a ship's doctor's malpractice). Additionally, a cruise ship ticket is a maritime contract, governed by maritime law. See The Moses Taylor, 71 U.S. (4 Wall.) 411, 427, 18 L.Ed. 397 (1866); Wallis v. Princess Cruises, Inc., 306 F.3d 827, 834 (9th Cir. 2002).
It is axiomatic under maritime law that a carrier owes a duty to its passengers to exercise reasonable care under the circumstances. See Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959); Muratore v. M/S Scotia Prince, 845 F.2d 347, 353 (1st Cir.1988); Rindfleisch v. Carnival Cruise Lines, Inc., 498 So.2d 488 (Fla. 3d DCA 1986).
In arguing that this duty should not be a basis to impose vicarious liability upon a cruise line for the negligence of its ship's physician in treating passengers Carnival relies upon the long line of decisions exemplified by Barbetta v. S/S Bermuda Star, 848 F.2d 1364, 1369 (5th Cir.1988), which held:
When a carrier undertakes to employ a doctor aboard ship for its passengers' convenience, the carrier has a duty to employ a doctor who is competent and duly qualified. If the carrier breaches its duty, it is responsible for its own negligence. If the doctor is negligent in treating a passenger, however, that negligence will not be imputed to the carrier. E.g., The Korea Maru, 254 F. 397, 399 (9th Cir.1918); The Great Northern, 251 F. 826, 830-32 (9th Cir.1918); Di Bonaventure v. Home Lines, Inc., 536 F.Supp. 100, 103-04 (E.D.Penn.1982); Cimini v. Italia Crociere Int'l S.P.A., 1981 A.M.C. 2674, 2677 (S.D.N.Y.1981); Amdur v. Zim Israel Navigation Co., 310 F.Supp. 1033, 1042 (S.D.N.Y.1969); Branch v. Compagnie Generale Transatlantique, 11 F.Supp. 832 (S.D.N.Y. 1935); Churchill v. United Fruit Co., 294 F. 400, 402 (D.Mass.1923); The Napolitan Prince, 134 F. 159, 160 (E.D.N.Y.1904); O'Brien v. Cunard Steamship Co., 154 Mass. 272, 28 N.E. 266, 267 (1891); Laubheim v. De Koninglyke Neder Landsche Stoomboot Maatschappy, 107 N.Y. 228, 13 N.E. 781 (1887).
See also Cummiskey v. Chandris, 895 F.2d 107 (2d Cir.1990); Doe v. Celebrity Cruises, 145 F.Supp.2d 1337 (S.D.Fla.2001); Mascolo v. Costa Crociere, 726 F.Supp. 1285 (S.D.Fla.1989). The stated basis for the Barbetta line of authority is the lack of the cruise line's ability to control the doctor-patient relationship and lack of expertise to control the doctor in his practice of medicine, in that "a ship is not a floating hospital." Barbetta, 848 F.2d at 1368-1371.
The Carlisles argue that the Barbetta cases are based upon flawed and outmoded assumptions regarding the cruise ship industry and the provision of medical services to passengers, and urge that Nietes v. American President Lines, Ltd., 188 F.Supp. 219 (N.D.Cal.1959) is a better reasoned decision. In Nietes, the cruise line was held vicariously liable for the negligence of the ship's doctor who was a member of the crew:

*4 It is our opinion that, where a ship's physician is in the regular employment of a ship, as a salaried member of the crew, subject to the ship's discipline and the master's orders, and presumably also under the general direction and supervision of the company's chief surgeon through modern means of communication, he is, for the purposes of respondeat superior at least, in the nature of an employee or servant for whose negligent treatment of a passenger a shipowner may be held liable ...
While it has been stated that `there is no more distinct calling than that of the doctor,' we are, nonetheless, persuaded to this conclusion by numerous cases which demonstrate the growing tendency to hold the doctor a servant in special circumstances, as where he is a resident physician on a hospital staff, or where he is a corporate employee performing medical services which accrue to the benefit of his employer
The rule of the older cases rested largely upon the view that a non-professional employer could not be expected to exercise control or supervision over a professionally skilled physician. We appreciate the difficulty inherent in such an employment situation, but we think that the distinction no longer provides a realistic basis for the determination of liability in our modern, highly organized industrial society. Surely, the board of directors of a modern steamship company has as little professional ability to supervise effectively the highly skilled operations involved in the navigation of a modern ocean carrier by its master as it has to supervise a physician's treatment of shipboard illness. Yet, the company is held liable for the negligent operation of the ship by the master. So, too, should it be liable for the negligent treatment of a passenger by a physician or nurse in the normal scope of their employment, as members of the ship's company, subject to the orders and commands of the master.
A carrier is under no duty to practice medicine ..., But, when a carrier undertakes the treatment of illness through medical services, provided by it aboard ship, it assumes the duty to treat carefully.
There is reason for imposing such liability, because the employment of a doctor aboard ship is a beneficial substitute for the shipowner's otherwise more costly duty to sick passengers. Where the ship carries no ship's physicians or nurses, the carrier is under a duty to provide such care and attention as is reasonable and practicable under the circumstances, and this has traditionally required the master to change course and put in at the nearest port, according to the gravity of the illness. This duty extends to both passengers and seamen whose lives may be threatened by illness on board ship. Any dereliction of the master in his duty to detour may be negligence for which the shipowner could be liable under the principle of respondeat superior. The shipowner, by providing a physician aboard ship, avoids his sometimes inconvenient and costly duty to change course for the benefit of an ailing passenger. This arrangement gives the shipowner competitive advantage in the maritime passenger industry over those sea-going carriers which have not provided the safety of on-board medical service.
181 F.Supp. at 220-221 (citations omitted). See also Fairley v. Royal Cruise Line, Ltd., 1993 AMC 1633 (S.D.Fla.1993)(criticizing Barbetta and supporting the rationale of Nietes, while recognizing the viability of an apparent agency theory of recovery).
*5 This issue has never been squarely addressed by this court or the Florida Supreme Court, and we, like many of the commentators, find Nietes to be the most persuasive precedent. See e.g., Norris, The Law of Maritime Personal Injuries, 4th Ed, § 3:10 ("In light of the modern trends with respect to tort liability, it is probable that the earlier cases holding that in passenger matters the shipowner's duty is fulfilled by employing a duly qualified and competent surgeon and medical practitioner and is only liable for negligence in hiring him but not for treatment by him, will not be followed," citing Judge Sweigert's "excellent opinion" in Nietes.); Beth-Ann Erlic Herschaft, Cruise Ship Medical Malpractice Cases: Must Admiralty Courts Steer by the Star of Stare Decisis?, 17 Nova L.Rev. 575 (1992); Michael J. Compagno, Malpractice on the Love Boat: Barbetta v. S/S Bermuda Star, 14 Tul. Mar. L.J. 381 (1990).
While Barbetta criticized Nietes as unrealistically presuming away the problem by assuming a ship's doctor was under sufficient control via modern communication with a company's chief surgeon, the Barbetta line of cases rests on even shakier fictions. Barbetta's finding that the cruise line should not be held responsible is premised on the unrealistic suggestion that an ailing cruise passenger at sea has some meaningful opportunity to simply forego treatment by the ship's doctor and demand that the captain fulfill his duty of care in some other fashion:
Second, as the Barbettas' counsel acknowledged during oral argument, even though a ship's doctor is provided for the passenger's convenience, no passenger is required to use the doctor's services; consequently, as counsel also conceded, a carrier must honor a passenger's decision not to use the ship's doctor and, when necessary, discharge its duty to provide aid in some other way.
Barbetta, 848 F.2d at 1372. A cruise passenger at sea and in medical distress does not have any meaningful choice but to seek treatment from the ship's doctor. The underlying basis in Barbetta and its progeny for the idea that the passenger has some choice in the matter, and that the cruise line lacks control because it cannot interfere in the doctor-patient relationship, is the following statement regarding ill passengers from O'Brien v. Cunard S.S. Co., 154 Mass. 272, 28 N.E. 266 (Mass. 1891):
They may employ the ship's surgeon, or some other physician or surgeon who happens to be on board, or they may treat themselves if they are sick, or may go without treatment if they prefer ...
154 Mass. at 276, 28 N.E. 266. Noticeably absent from this list is the option of demanding that the captain fulfill the duty of reasonable care "in some other way," likely because that concept was no more realistic in 1891 than it is today. Barbetta, it appears, employed this fiction to ameliorate the harshness of the rule it espoused.[1]
*6 The fallacy of the notion that the acutely ill passenger at sea has sifted through a series of options and ultimately chosen to use the ship's doctor underscores the fiction of the familiar incantation that the physician is on board merely for the "convenience of the passenger." In reality, as has been recognized, the ends of the cruise line are, at the very least, equally served by being able to fulfill its duty to ill or injured passengers without necessarily being required to disrupt the voyage or incur great expense to evacuate the patient every time a medical situation arises. See Nietes, 188 F.Supp. at 221; Fairley, 1993 AMC at 1639; Herschaft, supra, at 593; Compagno, supra, at 389-90. While the presence of an onboard physician is not required by law, the practical realities of the competitive cruise industry, and the reasonably anticipated risks of taking a small city of people to sea for days at a time, all but dictate a doctor's presence. There is also undoubtedly a benefit derived by the cruise line in being able both to market the availability of a doctor and to more cost effectively address its duty to its passengers.
Barbetta's conclusion that there is a "lack of control" over the doctor-patient relationship is based on the fiction that the passenger freely chose the doctor and on the concept that the doctor's work is not the business of the cruise line. 848 F.2d at 1368. The treatment of cruise passengers by the ship's doctor, however, is not alien to maritime pursuits. Indeed, in Rand v. Hatch, 762 So.2d 1001 (Fla. 3d DCA 2000), in concluding that general maritime law applies to a claim for a ship's doctor's malpractice, we held that such treatment "bears a significant relationship to traditional maritime activity," stating:
In Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 543, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995), the United States Supreme Court established that in considering whether a particular tort bears a significant relationship to traditional maritime activity to satisfy the nexus test, courts should consider whether the incident giving rise to the suit is likely to disrupt maritime activity and whether it is substantially related to traditional maritime activity to justify application of general maritime law. See Sisson v. Ruby, 497 U.S. 358, 365, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990)(discussing these considerations). In this case, Dr. Rand and Nurse Jackson were brought onboard a commercial vessel which sailed on navigable waters by the shipowner in order to render medical attention to both crew members and passengers when such attention was needed. Sick and injured crew and passengers, either left untreated or inadequately treated, are certainly likely to disrupt maritime activity, such as the successful navigation of a commercial vessel. (Emphasis added).[2]
Maritime law embraces the principles of agency. See Cactus Pipe & Supply Co., Inc. V. M/V Montmartre, 756 F.2d 1103, 1111 (5th Cir.1985); West India Industries, Inc. v. Vance & Sons AMC-Jeep, 671 F.2d 1384, 1387 (5th Cir.1982). These principles include that there is no inherent conflict between a physician's contractual independent contractor status and a finding of agency where the totality of the circumstances warrant, See Villazon v. *7 Prudential Health Care Plan, Inc., 843 So.2d 842, 854 (Fla.2003); Restatement (Second) of Agency § 14N cmt. a (1958), and that a conclusory statement of independent contractor status in a contract document is not necessarily controlling. Villazon, 843 So.2d at 853. See also Smith v. Commodore Cruise Line, Ltd., 124 F.Supp.2d 150, 157 (S.D.N.Y.2000)(ship's doctor was cruise line's agent, whose knowledge of personal injuries he treated is imputed to the cruise line).
The record indicates a certain amount of control over the doctor's medical services in that the cruise line provides the medical supplies, selects the nurses, sets the hours of operation of the infirmary, and provides a policy and procedures manual for the operation of the infirmary. When considering a claim based on agency, it is the right of control, not actual control, that may be determinative. Villazon, 843 So.2d at 853. Here, in addition to being an officer of the ship and subject to the ship's articles, Dr. Neri's duties were to provide "medical services and treatment to passengers and crew in accordance with PURCHASER'S Physician guidelines" and he was subject to dismissal for "failure to perform duties to the satisfaction of" Carnival.[3]
More significantly, because it is foreseeable that some cruise passengers at sea will develop medical problems and the only realistic alternative for such an ill or injured passenger is treatment by the ship's doctor provided by the cruise line, there is an element of control over the doctor-patient relationship which Barbetta failed to recognize. We reject the holding of the Barbetta line of cases and hold that the cruise line's duty to exercise reasonable care under the circumstances extends to the actions of the ship's doctor placed on board by the cruise line. We accordingly hold that, regardless of the contractual status ascribed to the doctor, for purposes of fulfilling the cruise line's duty to exercise reasonable care, the ship's doctor is an agent of the cruise line whose negligence should be imputed to the cruise line.
In imposing such vicarious liability we note that, on any given cruise, the cruise line is already held vicariously liable for the negligence of the same ship's doctor in the treatment of hundreds of peoplethe crewunder the maritime duty to provide maintenance and cure. See De Zon v. American President Lines, 318 U.S. 660, 63 S.Ct. 814, 87 L.Ed. 1065. 318 U.S. 660, 63 S.Ct. 814, 87 L.Ed. 1065 (1943); De Centeno v. Gulf Fleet Crews, Inc., 798 F.2d 138, 140 (5th Cir.1986); Fitzgerald v. A.L. Burbank & Co., 451 F.2d 670, 679 (2d Cir.1971); Central Gulf Steamship Corp. v. Sambula, 405 F.2d 291 (5th Cir.1968). Thus, in the case of a seaman, a ship owner is liable for the negligence of the ship's doctor regardless of the degree to which the doctor's medical activities, or the doctor-patient relationship, can be controlled by the ship owner.
As for the exculpatory language contained in the passenger ticket, 46 App. *8 U.S.C.A. § 183c invalidates certain purported disclaimers of liability:
It shall be unlawful for the manager, agent, master, or owner of any vessel transporting passengers between ports of the United States or between any such port and a foreign port to insert in any rule, regulation, contract, or agreement any provision or limitation (1) purporting, in the event of loss of life or bodily injury arising from the negligence or fault of such owner or his servants, to relieve such owner, master, or agent from liability, or from liability beyond any stipulated amount, for such loss or injury ... All such provisions or limitations contained in any such rule, regulation, contract, or agreement are declared to be against public policy and shall be null and void and of no effect.

See Carlisle v. Ulysses Line, Ltd., 475 So.2d 248 (Fla. 3d DCA 1985)(exculpatory clause attempting to relieve cruise line from liability for negligence of its servants would be unlawful under 46 U.S.C § 183c). See also Fairley, 1993 AMC at 1641, n. 7 (citing 46 App. U.S.C.A. § 183c for the proposition that cruise line's disclaimer of liability for physician's negligence did not, as a matter of law, preclude apparent authority claim). To the extent the cruise ticket seeks to limit Carnival's liability for the negligence of its agent, it is invalid.[4]
A cruise ship is a city afloat with hundreds of temporary citizens, some of whom are passengers and some of whom are the employees and agents of the cruise line who comprise the ship's crew, each of whom, within their particular sphere, owe a duty of reasonable care to the passengers. The cruise line's duty of reasonable care under the circumstances includes the duty of the ship's doctor to adhere to the standard of care of a reasonable ship's doctor under the circumstances.[5]
On the basis of the foregoing we reverse the summary judgment on the issue of vicarious liability and remand this matter for further proceedings consistent herewith.

On Motion for Rehearing and Certification
PER CURIAM.
We certify that we have passed on a question of great public importance:
WHETHER A CRUISE LINE IS VICARIOUSLY LIABLE FOR THE MEDICAL MALPRACTICE OF THE SHIPBOARD DOCTOR, COMMITTED ON A SHIP'S PASSENGER?
The motion for rehearing is denied.
NOTES
[1] Barbetta also misreads Nietes as assuming:

[T]hat by hiring any doctor to sail with the vessel, the carrier discharges that duty ... Given that the Nietes court wrongly assumed that without respondeat superior liability, a carrier could escape legal responsibility simply by providing any doctor for its passengers, we reject that court's analysis of why vicarious liability is necessary. Barbetta, 848 F.2d at 1372. Nietes, however, made no such assumption and, in fact, specifically recognized the duty to use due care in the hiring of a competent physician and the cause of action for a ship owner's breach of that duty. 188 F.Supp. at 221. Contrary to the implication of Barbetta, the duty to use due care in hiring does not obviate the duty to exercise reasonable care toward a passenger during a voyage.
[2] In Rand we cited Barbetta for the proposition that general maritime law is applicable to a claim of medical malpractice in navigable waters and, in dicta, we noted the holding of Barbetta. We were not called upon there to address the underlying vicarious liability issue.
[3] The record does not reflect the contents of the "Purchaser's Physician guidelines" referred to, although Carnival's director of medical credentialing, Dr. Diskin, testified Carnival did not provide ship's doctors with a manual as to specific medical procedures. He testified the policy and procedures manual for the operation of the infirmary was not geared toward the doctor, but more to the nurses who "essentially run the infirmary on a day-to-day basis." He further testified that he had assisted ship's doctors in determining whether certain new medications were appropriate for the ship's infirmary, and that a practice existed whereby land based doctors or hospitals under contract with Carnival to treat Carnival's crew members would maintain a telephone "hot line" to consult with ships' physicians when needed.
[4] Where a cruise passenger's medical negligence claim is limited to the ship's doctor individually, the passenger is effectively faced with having to engage in a game of personal jurisdiction and service of process roulette, with the ability to proceed against the doctor depending on various factors such as contacts with the state, whether medical treatment was provided in Florida waters or at sea, and the practical realities of effectuating service of process. See, e.g., Rana v. Flynn, 823 So.2d 302 (Fla. 3d DCA 2002)(personal jurisdiction present where treatment in Florida waters and there were multiple contacts with state); Elmlund v. Mottershead, 750 So.2d 736 (Fla. 3d DCA 2000)(no personal jurisdiction over non-resident ship's doctor with insufficient Florida contacts); Rossa v. Sills, 493 So.2d 1137 (Fla. 4th DCA 1986)(sufficient contacts to support personal jurisdiction). Two years after this matter was filed the Carlisles had not been able to serve process on Dr. Neri.
[5] As a result of our ruling it is unnecessary to address the issues raised with regard to apparent agency. We find no error in that portion of the summary judgment on the claim of negligent hiring. See Barbetta, 848 F.2d at 1373-74.