SHEPHERD, J.,
dissenting.
I respectfully dissent. I do not believe the trial court abused its discretion by quashing the service of process made on Dr. Marath on the ground it was untimely. In fact, I believe it more likely the court would have abused its discretion had it not granted Dr. Marath’s motion. A more complete and precise recitation of the facts of this case is necessary to explain my decision.
The initial complaint was filed on March 8, 2004. The defendants named in the complaint were Royal Caribbean Cruise, Ltd., and Steiner Management Services, LLC. One year later, on March 1, 2005, the trial court entered its order granting the plaintiffs motion to file an amended complaint, which included Dr. Marath, another shipboard doctor, and three nurses as additional defendants. It was not until June 26, 2007 — two years and four months after the amended complaint was filed— that plaintiffs counsel went to the Office of the Clerk of Courts to obtain a summons to serve on Dr. Marath. See Fla. R. Civ. P. 1.070(a). Ten days thereafter, on July 6, 2007, the plaintiff effected personal service upon Dr. Marath at his place of employment in Portland, Oregon. Notably, counsel for plaintiffs own investigative records, supplied to the trial court prior to the hearing on the motion to quash service of process on Dr. Marath, reflect that he knew the whereabouts of Dr. Marath as of November 21, 2006, a full seven months before seeking the issuance of a summons to serve upon him.
At the hearing on the motion to quash, plaintiffs counsel summarized his reasons for the delay in serving Dr. Marath to the trial judge as follows: “A, we [were] misled deliberately by the co-defendant [Royal Caribbean] who is orchestrating the entire defense of the case; and B, we were relying in good faith what the law was when the Third District opinion was the state of the law in this district until the Supreme Court decided.” With respect to the first charge, the trial court ruled, based upon the record before it and argument of counsel, “I have no reason to believe that was the case.” Instead, it concluded that in not diligently proceeding to serve Dr. Mar-ath, plaintiffs counsel was “making a choice.” There is ample evidence in the record to support this conclusion.
Prior to February 15, 2007, the law of this District was that a ship owner was vicariously liable under the theory of re-spondeat superior for the medical negligence of a shipboard physician. See Carlisle v. Carnival Corp., 864 So.2d 1, 5 (Fla. 3d DCA 2003). However, on February 15, 2007, the Florida Supreme Court reversed this Court’s decision in Carlisle. Carnival Corp. v. Carlisle, 953 So.2d 461, 471 (Fla.2007), quashing 864 So.2d 1 (Fla. 3d DCA 2003). It was not until this point that plaintiffs counsel proceeded, as he candidly states in his initial brief, “as expeditiously as possible” to serve Dr. Marath. Plaintiffs counsel admitted to the trial *93 judge at a hearing prior to that time, that he was trying to locate Dr. Marath, but “not really for the purpose of serving him, because we really don’t need to serve him, but for the purpose of obtaining his testimony.” It is obvious from these passages, as well as numerous other nearly identical statements and representations of plaintiffs counsel appearing in the record of this case, that the trial court did not abuse its discretion in concluding, on the record presented and argument made at the hearing on the motion to quash, the delay in serving Dr. Marath resulted from plaintiffs counsel “making a choice” not to proceed expeditiously to serve him while our opinion on the liability of cruise ship owners for the negligence of a shipboard physician remained the law of this District. See Emmer v. Brucato, 813 So.2d 264, 265 (Fla. 5th DCA 2002) (“Discretion ... is abused when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.” (citing Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla.1980) (quoting Delno v. Market St. Ry. Co., 124 F.2d 965, 967 (9th Cir.1942)))).
In fact, the record reflects that during the two years and four months after the plaintiff obtained authorization to add Dr. Marath and other emergency medical personnel as defendants, the plaintiff propounded only one piece of discovery designed to identify the whereabouts of these new defendants. As the majority points out, this single piece of discovery was an interrogatory served on October 4, 2005, and was answered by Royal Caribbean just three months later, on January 17, 2006. The full question and answer reads as follows:
1. Please identify by name, address, telephone number, date of birth, social security or other national identification number, passport number, permanent home address, current last known address, present employer, and/or last known employer, spouse, or next of kin the following persons:
[[Image here]]
f. All physicians, surgeons, physicians’ assistants, registered nurses, LPN’s, medical technicians, or other persons with medical training and medical services responsibilities who were part of the crew on the date of the incident described in the complaint.

ANSWER:

Dr. Aubyn Marath
Ship’s Doctor
c/o Medsource CC
P.O. Box 11547, Bloubergrant
7443, South Africa[5]
Contrary to the majority’s assertion, there is no record evidence of the filing of any motion to compel Royal Caribbean to provide a better answer to this interrogatory.[6] *94 If Royal Caribbean dragged its feet in dishing out discovery to the plaintiff, whether through inattention or with intent, it also must be admitted that plaintiffs counsel was complicit. The fact that plaintiffs counsel moved for only one 120 — day extension of time, found in Florida Rule of Civil Procedure 1.070(j), to serve Dr. Mar-ath, expiring September 6, 2005 — nearly two years before he actually was served, and two and a half years before the motion to quash was heard by the trial court on January 29, 2008 — further supports the trial court’s conclusion that plaintiffs counsel was “making a choice.”[7]
Florida Rule of Civil Procedure 1.070© was adopted by the Florida Supreme Court in 1988 to provide a remedy to a strategic practice, sometimes employed by plaintiffs’ counsel in certain circumstances, to file a suit and then take no action whatsoever to proceed on the claim. Bice v. Metz Constr. Co., 699 So.2d 745, 746 (Fla. 4th DCA 1997). As originally adopted, the rule required plaintiffs to cause service of the summons and complaint within 120 days of filing, absent a showing of good cause. See In Re Amendments to Rules of Civil Procedure, 536 So.2d 974, 977 (Fla.1988).[8] Ten years later, as experience revealed the rule sometimes acted to impose too severe a consequence on the unwary, see Amendment to Fla. R. Civ. P. 1.070(j)—Time Limit for Service, 720 So.2d 505 (Fla.1998), the Court broadened the rule to ameliorate these effects. See Amendment to Fla. R. Civ. P. 1.0700)—Time Limit for Service, 746 So.2d 1084 (Fla.1999); Amendment to 1.0700), 720 So.2d at 505. The rule currently reads:
(j) Summons; Time Limit. If service of the initial process and initial pleading is not made upon a defendant within 120 days after filing of the initial pleading directed to that defendant the court, on its own initiative after notice or on motion, shall direct that service be effected within a specified time or shall dismiss the action without prejudice or drop that defendant as a party; provided that if the plaintiff shows good cause or excusable neglect for the failure, the court shall extend the time for service for an appropriate period. When a motion for leave to amend with the attached proposed amended complaint is filed, the 120-day period for service of amended complaints on the new party or parties shall begin upon the entry of an order granting leave to amend. A dismissal under this subdivision shall not be considered a voluntary dismissal or operate as an adjudication on the merits under rule 1.420(a)(1).
Fla. R. Civ. P. 1.070 (2009) (emphasis added). As now written, the rule requires a trial court to grant a mandatory extension of time where good cause or excusable *95 neglect is shown. Id.; Amendment to 1.070(j), 720 So.2d at 505. In addition, it affords trial courts broad discretion to extend the time for service, even when good cause is not shown. Premier Cap., LLC v. Davalle, 994 So.2d 360, 362 (Fla. 3d DCA 2008). However, as we have cautioned, “this discretion is not limitless.” Shtalenkov v. Deatherage, 943 So.2d 200, 201 (Fla. 3d DCA 2006).
One limitation that has developed in our law on this subject is attorney inadvertence or mistake. Our decision in Hernandez v. Page, 580 So.2d 793 (Fla. 3d DCA 1991), is instructive. In Hernandez, we were presented with the plaintiffs’ appeal of an order dismissing a re-filed action after the plaintiffs voluntarily dismissed, without prejudice, their first cause of action. Plaintiffs filed their initial complaint on January 10, 1989. They re-filed their action on February 2,1989, but never repeated service of process on the defendants. Some eight months later, the defendants moved for dismissal because service had not been made within 120 days after filing suit, as required by Florida Rule of Civil Procedure 1.070(j). The only reason proffered for the delay we thought worthy of consideration was the plaintiffs’ assertion the defendants waived service of process within the 120-day period by engaging in settlement negotiations. Because the record demonstrated the discussions occurred before the second action was filed, we affirmed the decision of the trial court. We wrote,
Plaintiffs’ attorney offers no argument or record. support to rebut the clear evidence that his office had simply forgotten about this case until the defendants filed their motion to dismiss some eight months after suit was refiled. Thus, the trial court did not abuse its discretion in finding that plaintiffs failed to demonstrate good cause for failure to comply with Rule 1.070(j). Inadvertence or mistake of counsel without more does not constitute sufficient good cause to avoid dismissal under the rule.
Hernandez, 580 So.2d at 795. In the case before us, the plaintiffs attorney did not “simply forget” to serve Dr. Marath. As he admitted at hearing on the motion to quash, he affirmatively elected not to do so. If it is not an abuse of discretion to dismiss a case for failure to comply with Florida Rule of Civil Procedure 1.070(j), where plaintiffs’ counsel “simply forgot” to serve the defendant, it necessarily follows it cannot be an abuse of discretion to dismiss a case where a plaintiff “make[s] a [knowing] choice” not to serve the defendant. See also Docktor v. McCrocklin, 669 So.2d 1129, 1129 (Fla. 4th DCA 1996) (reversing the denial of a motion to dismiss an amended complaint naming appellant as a defendant where “[tjhere [was] nothing in this record showing any reason why the mortgagee did not timely serve process, much less anything amounting to good cause”).
Plaintiffs counsel finally urges the trial court abused its discretion in dismissing this case because the governing statute of limitations effectively renders the dismissal an adjudication on the merits.[9] This also appears to be the true concern of the *96 majority in its reversal of the trial court’s dismissal of this case. The record reflects, however, the trial court was well aware of the statute of limitations consequence to a dismissal of the action, and considered it in its deliberations. Cf. Carter v. Winn-Dixie Store, Inc., 889 So.2d 960, 961 (Fla. 1st DCA 2004) (reversing order of dismissal where it was “unclear if the trial court was aware that even without good cause, it was still permitted to grant an extension of time for service if it was warranted under the circumstances”). One can sympathize with the plaintiffs predicament. However, defendants also have rights. One of those rights is to be free from stale claims by one who has willfully or carelessly slept on his legal rights. Major League Baseball v. Morsani, 790 So.2d 1071, 1074-75 (Fla.2001). The plaintiff, acting through her counsel, made a tactical decision not to seriously pursue Dr. Marath in this case for more than twenty-eight months. I find unescapable the conclusion that the plaintiff slept on her legal rights. See id.
The cases cited by the majority do not compel a different conclusion. For example, Nationsbank, N.A. v. Ziner, 726 So.2d 364 (Fla. 4th DCA 1999), stands for the unremarkable proposition that if a plaintiff attempts service during the 120-day period, allowed by Rule 1.070(j), and the defendant has notice of the attempt, “the rule accomplishes its objective” — “to prevent a plaintiff from filing a suit and then taking no action” — even if the attempt is legally deficient. Id. at 366. Under this type of circumstance, “dismissal of an action is improper.” Id. Chaffin v. Jacobson, 793 So.2d 102 (Fla. 2d DCA 2001), also referenced by the majority, is a factually distinguishable case in which, unlike our case, the trial court was found to have abused its discretion by dismissing a case where plaintiffs counsel assumed responsibility for a pro se action and served the defendant 135 days after filing an amended complaint. Id. at 102. The total delay, including the pro se period of prosecution, was de minimis in relation to the statute of limitation consequence wrought by the dismissal, and also was without sentient design. Id. at 102-103. Our reversal of the trial court order quashing service of process in Premier Cap., LLC v. Davalle, 994 So.2d 360 (Fla. 3d DCA 2008), was not at all out of any concern for the statute of limitations consequence of the order under review. Rather, as previously intimated, see supra at 94, we reversed the order of the trial court because of its “failure to consider that it was permitted to grant an extension of time for service, even without a showing of good cause” under the 1999 amendment to Rule 1.070(j)- Id. at 362. Finally, in stark contrast to the two-years and four-months of silence by plaintiffs counsel after he obtained leave to amend the complaint in our case — punctuated by a single 120-day extension of time to serve Dr. Marath, obtained on one occasion during the first few months of those years, see supra at 93 plaintiffs counsel, in the recent case of Sly v. McKeithen, 27 So.3d 86 (Fla. 1st 2009), evidenced his intent to pursue the defendants, Miko Davette Harris and Corrections Corporation of America, during the entirety of the one-year period from the date the complaint was filed to the date the defendants were served, by filing three motions for a 120-day extension of time to serve process, which blanketed the period.[10] The plaintiffs counsel in that case was not sleeping on his .client’s legal rights.
*97 The record in this case reflects Dr. Mar-ath is a British national, whose specialty is cardiothoracic surgery. He testified in his deposition he lived in Florida between 1994 and 1998. He and his wife then moved to Oregon, where he became associated with Emanuel Hospital in Portland, Oregon. He first served on a Royal Caribbean ship as a shipboard doctor in October of 2003. The total amount of time he has served as a shipboard doctor was approximately four months on four or five different occasions.[11] Except for ordinary professional and personal travel, he has at all other times lived and worked in Portland, Oregon.
There is no evidence the plaintiff in this case ever tried to locate Dr. Marath by contacting Medsource. Nor did the plaintiff, prior to November 21, 2006 — a period of eighteen months after naming Dr. Mar-ath as a defendant — do any independent investigation to try to locate him. See Maher v. Best Western Inn, 667 So.2d 1024, 1027 (Fla. 5th DCA 1996) (Griffin, J., dissenting) (“It is reasonable for a lawyer representing a claimant to hire an investigator to locate a defendant for service of process.”). The fact of the matter is that these days, written discovery may be the least efficient way to locate a member of learned professions, such as the medical profession. In this instance, a brief Google search would have produced the business location for Dr. Marath at any moment plaintiffs counsel desired it.
Not only did the trial judge not abuse her discretion in dismissing this case, she eminently was correct in so doing. Throughout this entire period, plaintiffs counsel was “making a choice.” It is not our role to spare counsel from the consequences of his own strategic or tactical decisions.
I would affirm the trial court’s order of dismissal.

. Medsource is an international provider of medical personnel to the cruise industry. Medsource was Royal Caribbean’s contact point for securing Dr. Marath to serve on the vessel where the incident occurred.

. The trial court docket provided to us in this case is eighteen pages long and contains 617 entries. It reflects a pitched battle between the plaintiff and Royal Caribbean until the Florida Supreme Court issued Carlisle. As the majority states, numerous motions to compel were filed. See supra at 90. However, there is no indication that any of these motions sought a better answer to a question relating to the whereabouts of Dr. Marath. The fact that there was no such motion is confirmed by the trial judge during the hearing in response to plaintiff's counsel's asser *94 tion that he had been "repeatedly and deliberately misled by Royal Caribbean” when she countered, "You have not moved this Court to compel anything?” Counsel for the plaintiff made no effort to argue otherwise.

. The plaintiff has evidenced even less appetite for proceeding against the additional co-defendants named in the amended complaint, see supra at 91-92, having neither served them por moved for any extensions of time to do so.

. The rule as originally adopted read as follows:
(j) Summons-Time Limit. If service of the initial process and initial pleading is not made upon a defendant within 120 days after filing of the initial pleading and the party on whose behalf service is required does not show good cause why service was not made within that time, the action shall be dismissed without prejudice or that defendant dropped as a party on the court's own initiative after notice or on motion.
Fla. R. Civ. P. 1.070(j) (1989).

. The plaintiff in this case actually had the benefit of a longer than usual statutory period within which to bring this action because it is a maritime action. Under federal law pertaining to maritime actions, the plaintiff had three years within which to commence her action against Dr. Marath, instead of the usual two years provided by section 95.11 of the Florida Statutes. See 46 App. U.S.C.A. § 763a ("[A] civil action for damages for personal injury or death arising out of a maritime tort must be brought within 3 years after the cause of action arose.”). This federal statutory limitation period ran approximately three weeks after the Florida Supreme Court reversed our Carlisle decision.

. Each motion was filed before the expiration of the extension sought by the prior motion. The plaintiff's counsel apparently operated under the misimpression that the mere pendency of a motion for extension of time to serve a defendant under Florida Rule of Civil Procedure 1.070(j) insulates a plaintiff from a dismissal of his claim.

. The majority makes much of the fact that Dr. Marath still has Florida property and is President of a Florida corporation. According to the plaintiff's own investigative research, finally undertaken in November of 2006, the property currently owned by Dr. Marath in Tampa serves as both a home for his daughter and business address of record for Cardiostart International, Inc., a non-profit corporation formed by Dr. Marath in 1998 for the purpose of providing free heart surgery to persons in third-world countries. Automobile registration records reflect two vehicles titled in his name are garaged at that address. Dr. Marath has not practiced medicine or been affiliated with a Florida medical institution since 1994.