Barbara WALSH, Plaintiff,

v.

NCL (BAHAMAS) LTD.
et al., Defendants.

No. 06–CIV–21758.

United States District Court,
S.D. Florida.

Dec. 20, 2006.

Marc David Sarnoff, Sarnoff & Bayer, Coconut Grove, FL, for Plaintiff.

Amanda Lesley Jacobs, Darren Wayne Friedman, Maltzman Foreman PA, Miami, FL, for Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS THE COMPLAINT [DE # 7]**

GOLD, District Judge.

THIS CAUSE came before the Court upon a Motion to Dismiss filed by Defendant NCL (BAHAMAS) Ltd ("NCL") [DE # 7] filed on August 8, 2006. On August 16, 2006, Plaintiff filed a Response [DE # 8]. On August 23, 2006, NCL filed a Reply [DE # 13].

### I. Background

On July 14, 2006, Plaintiff filed a Two Count Complaint [DE # 1]. In the Complaint, Plaintiff alleges:

13. On or about August 18, 2005, the Plaintiff was a paying passenger/invitee on Defendant's vessel, "DAWN."

14. On August 18, 2005, at approximately 16:15, while the vessel was at sea, the Plaintiff was enjoying a visit to the ship's spa, where she was scheduled to use a hot tub. The spa staff instructed Ms. Walsh to undress and put on a robe, which she did, and crossed the lobby area of the spa to use the Ladies Room. Due to the accumulation of water on the floor of the spa's lobby, Ms. Walsh's feet went out from under her.

15. Even though this was area of the spa's lobby was frequently traversed by wet passengers coming from either the hot tub or the pool area, no provisions

were made to keep the area dry or keep the area from being slippery when wet.

Complaint, ¶¶ 13–15.

In Count I of the Complaint, Plaintiff alleges that NCL's negligence resulted in Plaintiff's in injury. In ¶¶ 22–25 of Count II, Plaintiff alleges:

22. The Defendant has a duty to the Plaintiff to treat her medically, and to allow the Plaintiff the opportunity to all the Plaintiff to enjoy the cruise, even if injured.

23. The Defendant refused to provide the Plaintiff Walsh with a wheelchair for the duration of the voyage, admitting there is an established policy against the use of a wheelchair by passengers.

24. As a result of the Defendant's negligence, the Plaintiffs injuries were exacerbated.

25. The Plaintiffs demands a trial by jury of all issues triable as of right by jury.

## II. Standard of Review

When considering a Motion to Dismiss pursuant to Federal Rules of Civil Procedure Rule 12(b)(6), the Court must liberally construe the Complaint in Plaintiffs' favor, *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969), and may only grant the Motion where it appears beyond doubt that Plaintiffs can prove no set of facts in support of their claims which would entitle them to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Moreover, the Court must at this stage of litigation, the Court must accept the allegations contained in Plaintiffs' Complaint as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

## III. Legal Analysis

In light of the applicable standard of review and assuming all facts as true, I conclude that Count I states a cause of action. With regard to Count II, NCL argues that this Count of the Complaint fails to state a cause of action as a matter of law because NCL has no duty under established precedent to provide Plaintiff with medical care. To support its Motion, NCL relies upon *Barbetta v. S/S Bermuda*, 848 F.2d 1364 (5th Cir.1988).

Specifically, NCL argues:

The seminal decision in the area of carrier immunity for the negligence of its ship's medical staff was provided by the Fifth Circuit in *Barbetta v. S/S Bermuda Star*, 848 F.2d 1364 (5th Cir.1988). *Barbetta* involved an action against a vessel owner and cruise ship operator for the negligence of the ship's physician in failing to discover the wife's diabetes during treatment. The court framed the issue as follows: "Does general maritime law impose liability, under the doctrine of *respondeat superior*, upon a carrier or ship owner for the negligence of a ship's doctor who treats the ship's passengers?" *Id.* at 1369. In rendering its decision as to the carrier's liability, the *Barbetta* court did not even reach the question of whether the ship's physician had been negligent. The court held that even assuming negligence on the part of the physician could be established, that negligence could not be imputed to the carrier. *Id.*

(NCL's Motion to Dismiss, 3).

In Response, Plaintiff argues, "there remains a justiciable issue as to whether the allegations, that Defendant failed to provide the Plaintiff with a wheel chair, come within the purview of whether this failure to provide the device by policy of NCL's is medical malpractice, which can be attributable to the Defendant." (Plaintiff's Re-

sponse, 3). Plaintiff argues, "[w]hether the policy of not providing injured passengers with the ability to utilize a wheelchair is made by the doctor of the vessel or is made by the cruise line itself, is a matter of discovery." (Plaintiff's Response, 4). To support her position, Plaintiff cites to *Carlisle v. Carnival Corp.*, 864 So.2d 1 (Fla. 3d DCA 2003) and *Huntley v. Carnival Corp.*, 307 F.Supp.2d 1372 (S.D.Fla. 2004) for the proposition that the NCL had a duty to treat her medically and to allow her to enjoy the cruise even if injured.[1]

Having closely reviewed the parties' submissions and applicable case law, I do not find merit in Plaintiff's arguments. In reaching this conclusion, I first note that Plaintiff's position with regard to her need to conduct discovery concerning NCL's policy regarding the use of wheelchairs is in direct conflict with ¶ 23 of her Complaint. In ¶ 23, Plaintiff alleges that NCL "refused to provide the Plaintiff Walsh with a wheelchair for the duration of the voyage, admitting there is an established policy against the use of a wheelchair by passengers." In light of the face of the current Complaint, Plaintiff's argument that she needs discovery to determine if the use of wheelchairs by passengers is a company policy or a doctor's policy is without merit. As currently alleged, the Complaint alleges that it is NCL's established company policy not to provide wheelchairs to its passengers. While I render no opinion on such policy, I conclude that whether the policy of not providing wheelchairs is a company policy or a decision made by onboard medical staff is of no consequence for purposes of evaluating the current Motion to Dismiss because under either scenario, the outcome would be the same.

If Plaintiff is not alleging vicarious liability and is simply alleging that NCL failed to treat her medically by failing to provide her a wheelchair, Count II of the Complaint fails as a matter of law. In particular, ¶ 22 of the Complaint alleges NCL had a duty to medically treat her. However under the majority rule articulated by *Barbetta*, NCL has no duty to provide Plaintiff with medical services.

The Fifth Circuit in *Barbetta* summarized the majority view as follows:

> When a carrier undertakes to employ a doctor abroad ship for its passengers' convenience, the carrier has a duty to employ a doctor who is competent and duly qualified. If the carrier breaches its duty, it is responsible for its own negligence. If the doctor is negligent in treating a passenger, however, that negligence will not be imputed to the carrier. *Barbetta*, 848 F.2d at 1369.

*See also Mascolo v. Costa Crociere*, 726 F.Supp. 1285 (S.D.Fla.1989)(holding that a ship owner is not in the business of providing medical services to passengers).

In this case, Plaintiff is not alleging that NCL's medical staff failed to provide treatment after she sustained injuries. Instead, Plaintiff alleges that she was not granted a wheelchair upon request. However, failure to provide a wheelchair can not constitute negligence on NCL's part, as NCL has no legal duty under the established law of *Barbetta* to provide her with medical services. Thus to the extent that Plaintiff alleges that NCL had a duty to provide her with medical services in ¶ 22, such claim fails as a matter of law.

---

1. In evaluating the current Motion to Dismiss, I am conducting a limited inquiry into the legal question of whether NCL has a legal duty to provide medical services including providing a wheel chair for passengers who suffered an accident while onboard. This Order does not address whether NCL has a duty to provide for passengers with disabilities who do not furnish their own wheelchairs.

Even if I were to assume that the use of wheelchairs was not a company policy and the refusal of the wheelchair was made by a doctor or shipboard medical staff, I would reach the same result. As stated in NCL's Motion to Dismiss and Reply, *Barbetta* is still the rule of law in the federal courts of this jurisdiction. The Court's review of the case law indicates that as recently as last year, Judge Martinez of this district specifically declined to follow the *Carlisle* or *Huntley* decisions, which Plaintiff relies strongly upon. Additionally, Judge Martinez held that the majority rule articulated by *Barbetta* should not be deviated from. *See Doonan v. Carnival,* 404 F.Supp.2d 1367 (S.D.Fla.2005)(declining to follow either *Huntley* or *Carlisle* decision).

In *Doonan,* Judge Martinez summarized the majority rule of *Barbetta* as follows:

> The majority rule, as set forth in *Barbetta,* establishes that a cruise line cannot be held vicariously liable for the negligence of its ship's doctor in the care and treatment of passengers. *Barbetta,* 848 F.2d at 1369; *see also The Korea Maru,* 254 F. 397 (9th Cir.1918); *Di Bonaventure v, Home Lines, Inc.,* 536 F.Supp. 100 (E.D.Pa.1982); *Churchill v. United Fruit Co.,* 294 F. 400 (D.Mass. 1923); *Mascolo v. Costa Crociere, S.p.A.,* 726 F.Supp. 1285 (S.D.Fla.1989). The justification for this rule are the cruise line's lack of control over the doctor-patient relationship and the cruise line's failure to possess expertise in supervising the doctor in his practice of medicine. *Barbetta,* 848 F.2d at 1369–70.

*Doonan,* 404 F.Supp.2d at 1370–71.

■ Like Judge Martinez in *Doonan,* I do not find Plaintiff's argument sufficiently persuasive to justify deviation from the majority rule as set forth in *Barbetta.*[2] Under the majority rule articulated by *Barbetta,* NCL cannot be held vicariously liable for the actions of its shipboard medical staff. Thus if the decision to withhold a wheelchair, which is characterized as a medical decision in the Complaint, was made by the shipboard doctor or medical staff, NCL cannot be held liable as a matter of law for the actions or inaction of its medical staff.

Therefore, I conclude that Count II fails to state a claim as a matter of law to the extent that Count II alleges that NCL has a duty to Plaintiff to treat her medically. Alternatively, even if the decision to withhold a wheelchair was a medical decision and that medical decision was made by a medical professional onboard, NCL cannot be held vicariously liable for medical decisions made by shipboard medical staff under the current established law which this Court is unwilling to divert from. Thus, NCL's Motion to Dismiss Count II of the Complaint is GRANTED only to the extent that Count II pleads that NCL had an affirmative duty to provide Plaintiff with medical services and that NCL is liable for the negligence of its onboard medical staff.

### IV. Conclusion

For the above reasons,

It is hereby **ORDERED AND ADJUDGED** that:

1) NCL's Motion to Dismiss is GRANTED IN PART, DENIED IN PART [DE # 7].

2) NCL's Motion to Dismiss Count I of the Complaint is DENIED.

3) NCL's Motion to Dismiss Count II of the Complaint is GRANTED only to the extent that Count II pleads that NCL had an affirmative · duty to provide Plaintiff

---

**2.** I note that *Carlisle v. Carnival Corp.,* 864 So.2d 1 (Fla. 3d DCA 2003) and *Huntley v.* *Carnival Corp.,* 307 F.Supp.2d 1372 (S.D.Fla. 2004) are merely persuasive authority.

with medical services and that NCL is liable for the negligence of its onboard medical staff in ¶ 22 of the Complaint.

4) Plaintiff shall file her Amended Complaint no later than the date set for such amendments that will be determined at a telephonic status conference to be established at a later date to discuss the parties' "Joint Motion to Extend Discovery" [DE # 19].