**Sandra HAJTMAN, Plaintiff,**

v.

**NCL (BAHAMAS) LTD. d/b/a NCL and Jane Doe (ship's nurse), and Dr. Doe (ship's doctor), Defendants.**

**No. 07–22429–CIV.**

United States District Court,
S.D. Florida.

Dec. 7, 2007.

Jason Robert Margulies, Lipcon Margulies & Alsina, Miami, FL, for Plaintiff.

Noah Daniel Silverman, Sean Jason Gelb, Darren W. Friedman and Jeffrey E. Foreman, Maltzman Foreman PA, Miami, FL, for Defendants.

### ORDER GRANTING DEFENDANT NCL'S MOTION TO DISMISS

K. MICHAEL MOORE, District Judge.

This CAUSE came before the Court upon Defendant NCL's Motion to Dismiss (dkt.# 12). On November 7, 2007, the Plaintiff filed her Response (dkt.# 21). On November 25, 2006, the Defendant filed its Reply (dkt.# 25).

UPON CONSIDERATION of the Motion, the Responses, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

## I. BACKGROUND

Sandra Hajtman ("Plaintiff") is a citizen of the state of Texas and Defendant, NCL (Bahamas), Ltd ("NCL") is a corporation that has its principal place of business in Florida. *See* Compl. at 1. Defendant's business provides vacation cruises aboard various vessels, including the vessel Norwegian Dream. *Id* at 2. Defendant is the owner, operator, and manager of the vessel Norwegian Dream. *Id.*

On or about September 18, 2007, the Plaintiff brought this action against Defendant in the United States District Court, Southern District of Florida. Plaintiff claims that Defendant was negligent during Plaintiff's November 2006 vacation cruise aboard the Norwegian Dream. *Id* at 3.

On or about November 1, 2006, Plaintiff, abroad Defendant's vessel, sought medical attention for severe abdominal pain. A nurse questioned Plaintiff regarding her symptoms, and specifically asked whether Plaintiff had "loose stools." *Id.* Plaintiff responded in the affirmative and further requested to be seen by the doctor. The nurse told Plaintiff that Plaintiff had "Norwalk Virus" and could not see the doctor, but should remain in her cabin. Plaintiff did not obtain any medical treatment or supervision for three days until November 4, 2006, when Plaintiff, whose condition had worsened, returned to the medical facility and demanded to see the doctor. *Id.* The doctor agreed to see Plaintiff and concluded that Plaintiff had pseudomonas colitis; consequently, the Coast Guard airlifted the Plaintiff from the vessel. *Id.*

## II. ANALYSIS

### A. Standard of Review

A motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. *Milburn v. United States,* 734 F.2d 762, 765 (11th Cir.1984). On a mo-

tion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff and accept the factual allegations as true. *SEC v. ESM Group. Inc.,* 835 F.2d 270, 272 (11th Cir.1988). Further, the Court should not grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (citations omitted): *see also South Fla. Water Mgmt. Dist. v. Montalvo,* 84 F.3d 402, 406 (11th Cir.1996). Specifically, "It is a well-settled principle of law that a complaint should not be dismissed merely because a plaintiff's allegations do not support the particular legal theory he advances, for the court is under a duty to examine the complaint to determine if the allegations provide for relief on *any* possible theory." *Bowers v. Hardwick,* 478 U.S. 186, 201–02, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986) (Blackmun, J., dissenting) (quotations omitted); *see Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1369 (11th Cir.1997). Nonetheless, to withstand a motion to dismiss, it is axiomatic that the complaint must allege facts sufficiently setting forth the essential elements of a cause of action.

### B. Governing Law

Federal maritime law governs Plaintiff's dispute in this matter. In this case, despite diversity of citizenship between the parties, the alleged injury occurred on navigable waters; therefore, maritime law controls the substantive issues. *Everett v. Carnival Cruise Lines,* 912 F.2d 1355, 1358 (11th Cir.1990) (holding "[e]ven when the parties allege diversity of citizenship as the basis of the federal court's jurisdiction, if the injury occurred on navigable waters, federal maritime law governs").

### C. *Plaintiff's Claims*

Plaintiff alleges thirteen (13) Counts against Defendant, Dr. Doe, and Nurse Jane Doe. *See* Compl. at 1–26. Of the thirteen total counts, Plaintiff alleges eight counts at Defendants directly; including Counts I, III, IV, VI, VII, VIII, XI, and XII. *Id.* Encapsulated within those counts, Plaintiff asserts the following theories of recovery against Defendant NCL: independent negligence liability, vicarious liability, liability resulting from apparent agency, and false imprisonment

#### i. *Independent Negligence for Failure to Generate Policies and Procedures*

■ In Count I, Plaintiff alleges negligence against Defendant NCL for its failure to promulgate and enforce "polices and/or procedures to ensure that sick passengers" have access to the ship's doctor, are not prevented from obtaining medical care, and are not left unattended after diagnosis.

■ Maritime law holds that a shipping company is not vicariously liable for the medical staffs[1] negligent acts, *Barbetta v. Bermuda Star,* 848 F.2d 1364, 1369 (5th Cir.1988) (holding "[i]f the doctor is negligent in treating a passenger, however, that negligence will not be imputed to the carrier"). The *Barbetta* Court correctly equates vicarious liability with control. It holds that if the owners of the ship cannot control the doctor then they cannot be held liable. *Id.* The Court further reasoned that it was not the carrier's prerogative,

nor should it be, to control and influence the decisions of the medical staff because the carrier lacks any medical expertise. *Id.* (stating "a shipping company is not in the business of providing medical services to passengers; it does not possess the expertise requisite to supervise a physician or surgeon carried on board a ship as a convenience to passengers").

Here, Plaintiff argues that Defendant carrier should have promulgated and enforced medical standards and procedures for sick patients aboard their vessels. Just as Defendant lacks the expertise to supervise a medical staff, it lacks the expertise to create medical guidelines that the medical staff must adhere to. Further, it would not be prudent to require a non-medically trained company, such as Defendant, to make medical determinations regarding the physical health and processing of its passengers; those decisions must be left within the control of trained medical professionals. Defendant is not required to promulgate or enforce particular medical directives regarding patient care; therefore, Defendant was not negligent in its failure to do so.

#### ii. *Defendant's Vicarious Liability, under Respondent Superior, for Nurse Jane Doe and Dr. Doe*

■ Similarly to Count I above, Plaintiff alleges in Count III, VI, and XI that Defendant is vicariously liable under the theory of respondeat superior for the alleged

---

1. Plaintiff draws attention to the difference between a ship's doctor and its nurses and/or medical staff. This Court believes that for the same reasons articulated in *Barbetta,* there is no difference between a doctor and medical staff regarding a shipping company's vicarious liability. Further, as the court held in *Nanz,* "just as the work between passenger and ship's doctor is outside the business of the shipowner/operator, so too is work be-

tween the ship's medical staff and the passenger outside the business of the shipowner/operator." *Nanz v. Costa Cruises,* 1991 AMC 48, 50 (S.D.Fla.1990). In short, since the carrier does not control the doctor or medical staff, they are not vicariously liable for their negligent acts. The maritime jurisprudence does seem to indicate that the carrier can be, however, liable for negligently hiring either the doctor *and/or* the medical staff. *See Id.*

negligence of Nurse Jane Doe and Dr. Doe. *See* Compl. at 8, 20.

▮ It is well established, under maritime law, that carriers or shipowners cannot be held liable on a theory of respondeat superior "for the negligence of a ship's doctor who treats the ship's passengers." *Barbetta*, 848 F.2d at 1372 (further holding "[a]n impressive number of courts from many jurisdictions have, for almost one hundred years followed the same basic rule: ... If the doctor is negligent in treating a passenger, however, that negligence will not be imputed to the carrier").

▮ In keeping with over a hundred years of precedent and the Fifth Circuit, this Court finds that Defendant is not vicariously liable, under a theory of respondeat superior, for the medical staffs negligence in treating and or allegedly falsely imprisoning a passenger. All of Plaintiff's claims regarding negligent medical treatment stem from Nurse Jane Doe and Dr. Doe's alleged negligence, not from Defendant's negligence in hiring its medical staff. Plaintiff's Counts III, VI, and XI are dismissed.[2]

### iii. Defendant's Vicarious Liability, under Apparent Agency, for Nurse Jane Doe and Dr. Doe

▮ In Counts VII, VII, and XII, Plaintiff maintains that Defendant is liable for the negligence and alleged actions of false imprisonment carried out by Nurse Jane Doe and Dr. Doe based upon a theory of apparent agency.

▮ It is permissible for a court sitting in Admiralty, to hear vicarious liability claims premised upon the theory of apparent agency, *See Doonan v. Carnival Corporation*, 404 F.Supp.2d 1367, 1371 (2005).

The *Doonan* court reiterated the requirements of establishing apparent agency:

> Apparent Agency will be established when: 1) the alleged principal makes some sort of manifestation causing a third party to believe that the alleged agent had authority to act for the benefit of the principal, 2) that such belief was reasonable and 3) that the claimant reasonably acted on such belief to his detriment

*See Doonan*, 404 F.Supp.2d at 1371.

In this case, Plaintiff avers that the apparent agency of Nurse Jane Doe and Dr. Doe was established because both individuals "wore a ship's uniform, ate with the ship's crew, was under the commands of the ship's officers, was called a ship's officer, worked aboard the ship, was paid a salary by NCL, and spoke to the Plaintiff as though she had authority to do so by NCL." *See* Compl. at 15. Another Southern District of Florida Court held that wearing a ship's uniform, being addressed as a ship's officer, and being listed as a crew member in a brochure are enough to prevent a Court from dismissing an apparent agency claim at the motion to dismiss stage. *See Doonan*, 404 F.Supp.2d at 1372. Given the attributes of agency listed above, there is a possibility that NCL, as principal, did make some sort of manifestation of agency that caused Plaintiff to believe that Nurse Jane Doe and Dr. Doe had authority to act for the benefit of Defendant. This satisfies the first of three prongs regarding apparent agency.

Plaintiff, however, is unable to satisfy the second apparent agency prong, which requires that Plaintiff's belief of alleged agency be reasonable. Plaintiff's belief is unreasonable as a matter of law. Given the long standing maritime principle that carriers and shipowners are not vicariously

---

**2.** Assuming the facts support such a claim, Defendant can be held vicariously liable for employing a negligent doctor who is not competent or duly qualified. *See Barbetta*, 848 F.2d at 1369.

liable for the acts of their medical staff, which is based upon the logical notion that vacation cruise boat companies are not hospitals and have no expertise in establishing or controlling medical procedures, it is unreasonable for Plaintiff to believe that Jane and Dr. Doe were Defendant's Agents. *See Warren v. Ajax*, 1995 WL 688421 (S.D.Fla.) (holding "Plaintiff's belief may have been 'honest,' however, in view of the established law on this point, it was not reasonable"). Further, in this case, Defendant even took an additional step to dispel any possible confusion regarding Nurse Jane Doe and Dr. Doe's agency status. Here, Defendants stated in their passenger ticket contract:

if the vessel carries a surgeon, physician, ... or if the vessel requests emergency medical care for the passenger on his behalf, it is understood and agreed to that Carrier does so solely for the convenience of the passenger, and does not act on behalf of or supervise the parties or persons who own, furnish, or operate such services or facilities and that the same are provided by independent contractors who work directly for the passenger ... such parties or persons, in dealing with the passenger are not and shall not be considered in any respect whatsoever as employees, servants, or agents of the Carrier,

*See* Compl. Ex A at ¶ 9. Irrespective of the fact that Defendant is prohibited from limiting liability where it is against public policy, this contractual language serves as further notice to Plaintiff that no agency relationship exists between Defendant and Dr. and Jane Doe. *See Barbetta*, 848 F.2d at 1372 (discussing a similar liability clause, the *Barbetta* Court held "[w]e note only that because there was no liability to disclaim, the contractual provision is not a disclaimer; it is instead, merely an accurate restatement of the principles of general maritime law which we have reviewed above"). Plaintiff is unable to satisfy the apparent agency standard; consequently, Counts VII, VIII, and XII are dismissed.

### iv. Defendant's Liability for Alleged False Imprisonment

Finally, Plaintiff's Count IV asserts that Defendant is liable for false imprisonment. Without entering into the elements and merits of Plaintiff's claim of false imprisonment, this Court addresses the threshold issue of control and vicarious liability.

The alleged false imprisonment resulted, if at all, from the infirmary staff's medical determination. As discussed above, the Defendant, as Carrier, lacks the expertise to manage and supervise the decisions of the medical staff. *See Barbetta*, 848 F.2d at 1369. In addition, if the decision to quarantine Plaintiff, which resulted in the alleged false imprisonment, was a negligent decision, it was made by the medical staff, whose negligence cannot be imputed to Defendant *Id.* Therefore, any claim for false imprisonment lies against Nurse Jane Doe and Dr. Doe, not Defendant. Count IV of Plaintiff's claim is dismissed.

### III. CONCLUSION

For the foregoing reasons, it is

ORDERED AND ADJUDGED that Defendant's Motion to Dismiss (dkt.# 12) is GRANTED. It is further

ORDERED AND ADJUDGED that Counts I, III, IV, VI, VII, VIII, XI, and XII are DISMISSED for failure to state a claim against Defendant NCL, upon which relief can be granted. It is finally

ORDERED AND ADJUDGED that Plaintiff has on or until December 18, 2007, to file any additional claims against Defendant NCL that are not inconsistent with this Order.

DONE AND ORDERED.