**Mary E. GLINIECKI, as Personal Representative of the Estate of A. Conrad Gliniecki, Plaintiff,**

v.

**CARNIVAL CORPORATION d/b/a Carnival Cruise Lines, a foreign corporation, Defendant.**

**Case No. 09–20577–CIV.**

United States District Court, S.D. Florida.

June 30, 2009.

Glenn J. Holzberg, Law Offices of Glenn J. Holzberg, Philip Dixon Parrish, Philip D. Parrish PA, Miami, FL, for Plaintiff.

Jeffrey Eric Foreman, Jeffrey Bradford Maltzman, Gregory R. Elder, Maltzman Foreman PA, Miami, FL, for Defendant.

***ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND CLOSING CASE***

PATRICIA A. SEITZ, District Judge.

THIS dispute arises from the stroke decedent A. Conrad Gliniecki ("Conrad") suffered aboard the vessel Carnival Miracle. At the June 23, 2009 hearing on Defendant's Motion to Dismiss [DE 4], Plaintiff argued that Defendant ("Carnival") had a duty to timely transport Conrad to suitable Panamanian medical facilities aboard an adequately equipped ambulance. Carnival disagreed, arguing that it discharged its duty when it transported Conrad to shore. Further, Carni-

val maintained that requiring it to transport ill passengers to adequate medical facilities in foreign countries would require cruise lines to be medical care insurers. After review of the motion, the response and reply thereto, the record, and the arguments of counsel, the Court will grant Carnival's motion to dismiss because Carnival did not have a duty to promulgate procedures or arrange transportation to adequate on-shore medical facilities aboard a competently equipped ambulance.

## I. Background

On March 9, 2008, Conrad and his wife Mary Gliniecki were passengers aboard the Carnival Miracle. (*See* DE 1 "Complaint" ¶ 8.) At 8:30 a.m., while the boat was docked in Colon, Panama, Conrad suffered a stroke. (*See id.*) Mary Gliniecki phoned the ship's infirmary, and a ship nurse arrived 30 to 40 minutes later. (*See id.*) The nurse observed that Conrad was lying on his side, drooling, incontinent of urine, with slurred speech, and unable to stand unaided. (*See id.*) Conrad was admitted to the infirmary around 9:30 a.m., and the resident physician diagnosed that he suffered a stroke and ordered him to disembark and proceed to a Panamanian hospital in an ambulance equipped with life support systems. (*See id.* ¶¶ 9–11.) Approximately ten minutes after Conrad entered the ship's infirmary, he was taken ashore and transported to an area medical facility aboard a van not equipped to treat stroke patients. (*See id.* ¶ 11, 12.)

Conrad arrived at the Colon, Panama hospital around 9:50 a.m., but the hospital did not have the facilities to treat stroke victims. (*See id.* ¶ 11) He was transferred to Clinica Einstein in Panama City, Panama aboard the same ill-equipped van that transported him to the Colon hospital. (*See id.* ¶ 12.) The van's emergency lights repeatedly fell during the ride, causing the driver to stop and retrieve the lights. (*See id.*) The seventy kilometer ride from Colon to Clinica Einstein took approximately eighty minutes. (*See id.*) At Clinica Einstein, Conrad received treatment for his stroke, but by then, four hours elapsed since he was found. (*See id.* ¶ 13.) According to Plaintiff, stroke treatment must be administered within one hour of symptom onset to be effective. (*See id.*) Sometime thereafter, Conrad returned to his Michigan home, despondent and disabled. (*See id.* ¶ 14.) On November 9, 2008, Conrad committed suicide. (*See id.*)

On March 6, 2009, Mary Gliniecki, as representative of Conrad's estate, filed suit seeking damages for Carnival's failure: (1) "to adequately arrange for a transfer with medical care in transit in an appropriate manner given Plaintiff[']s known medical condition to the hospital;" (2) "to have adequate and appropriate arrangements in advance to permit timely and sufficient transfers of passengers in need of medical care such as Plaintiff;" and (3) "to adopt policies and procedures for the timely and safe transport of sick passengers who need prompt and appropriate medical attention for whom unnecessary delays may reasonably change the outcome." (*See id.* ¶ 24.) On March 30, 2009, Carnival moved to dismiss, arguing that it had no duty to ensure proper medical care and emergency response. (*See* DE 4.)

## II. Standards

To survive a motion to dismiss, Plaintiff's complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Thus, accepting all the allegations contained in the complaint as true, the complaint "must plausibly suggest that the plaintiff has a

right to relief, raising that possibility above a speculative level; if they do not, the plaintiff's complaint should be dismissed." *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 (11th Cir.2008) (citations omitted). Although this action is governed by admiralty law, shipowners like Carnival "owe[ ] the duty of exercising reasonable care to those lawfully aboard the vessel who are not members of the crew." *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959); *Barbetta v. S/S Bermuda Star*, 848 F.2d 1364, 1367 (5th Cir.1988). By contrast, ship owners have no duty to provide medical services, as they are not in the health care industry and lack the expertise required to supervise the provision of medical services. *See Barbetta*, 848 F.2d at 1369; *Mascolo v. Costa Crociere, S.p.A.*, 726 F.Supp. 1285, 1286 (S.D.Fla.1989); *Walsh v. NCL (Bahamas) Ltd.*, 466 F.Supp.2d 1271, 1273 (S.D.Fla.2006).

## III. Discussion

 Plaintiff maintains that dismissal is unwarranted because Carnival had a duty to transport Conrad ashore in a manner reasonable under the circumstances. However, if Plaintiff merely protested the method in which Carnival removed Conrad from the vessel, the complaint would fail to show that Carnival acted unreasonably. The complaint does not aver that Conrad was injured when transferred to shore. Indeed, according to the complaint, Carnival transported Conrad ashore approximately ten minutes after he was admitted to the ship's infirmary. (*See* Complaint ¶¶ 11, 12.) The complaint is more ambitious, to be sure, seeking to hold Carnival liable for failing to secure timely transportation aboard a life support system-equipped ambulance to a medical facility in Panama capable of treating stroke victims. (*See id.* ¶ 24.) Further, the complaint protests that Carnival failed to promulgate policies and procedures to ensure timely and safe medical transportation to passengers in need of care. (*See id.*)

Taken to their logical conclusion, Plaintiff proposes duties far beyond preventing accidents as passengers travel across the ship's gangplank. In this case, Carnival would, at a minimum, have to procure Panamanian ambulance services, certify that their life support equipment was sufficient to treat stroke victims, and ensure that Conrad traveled seventy kilometers from port to Clinica Einstein in sufficient time to prevent the worst consequences of his stroke. In every other case thereafter, Carnival would have to be similarly sensitive to the particularities of the passenger's illness to discharge the duties Plaintiff submits.

To vest Carnival, and ship owners like it, with the duty to provide medical transportation services in foreign ports of call each time a passenger falls ill would turn cruise lines into insurers of passenger health, a proposition which runs contrary to the dictates of *Barbetta*. "A shipping company is not in the business of providing medical services to passengers." *Barbetta*, 848 F.2d at 1374 (citation omitted). "[I]t does not possess the expertise requisite to supervise" medical transportation officers or inspect medical transportation equipment. *Id.* Indeed, this Court has refused similar invitations to elevate ship owners to the status of medical services providers.[1] Be-

---

1. *See Walsh*, 466 F.Supp.2d at 1273 (no duty to provide wheel chair to passenger after slip and fell); *Hajtman v. NCL (Bahamas) Ltd.*, 526 F.Supp.2d 1324, 1328 (S.D.Fla.2007) (no duty to promulgate procedures to ensure pas- senger access to ship physician); *Hesterly v. Royal Caribbean Cruises, Ltd.*, 515 F.Supp.2d 1278, 1285 (S.D.Fla.2007) (rejecting characterization of cruise line as medical care provider).

cause Carnival has no duty to provide medical transportation policies or services, Plaintiff cannot state a claim upon which this Court can grant relief, and thus leave to amend would be futile. Therefore, the Court must grant Carnival's motion to dismiss with prejudice.

## IV. Conclusion

As discussed above, Carnival has no duty to provide the emergency medical care policies or services Plaintiff demands. The Court must therefore grant Carnival's motion to dismiss. Accordingly, it is hereby

ORDERED that

(1) Carnival's Motion to Dismiss [DE 4] is GRANTED. This case is DISMISSED WITH PREJUDICE.

(2) All pending motions are DENIED AS MOOT.

(3) This case is CLOSED.